BRADFORD v. BUCHANAN.

1. ACTION—AGREED STATEMENT—BINDING FORCE.—In action for recovery of land, the scope of the action was enlarged at the trial by an agreed statement of facts signed and verified by counsel, the parties to the record not objecting. *Held*, that the statement not having been agreed to by the parties themselves, could not be considered, so far as it enlarged the scope of the action as made by the pleadings.

2. HOMESTEAD—MORTGAGE—SHERIFF'S SALE—RENTS.—Levy was made under execution on a tract of land of 325 acres, on which rested two older mortgages. No claim for homestead was made, and the land was sold by the

sheriff under this execution, the debtor not objecting. The purchaser paid his bid and received title, took possession and bought the two mortgages as a protection to his title, and the former owner rented the land from him. Afterwards, this land being levied upon under a junior judgment, this debtor claimed homestead, and 125 acres was assigned to him as such homestead, who then brought action against the purchaser to recover this 125 acres. *Held*, that the sheriff's sale was not void, nor is the purchaser liable for rents and profits during all the time of his possession.

3. SHERIFF'S SALE—MORTGAGES.—A purchaser at sheriff's sale of land covered by the lien of senior mortgages, takes title subject to the mortgages, which must be paid by the purchaser in order to disencumber his title.

4. HOMESTEAD—MORTGAGES—SHERIFF'S SALE.—A homestead is not an estate, but only an exemption, and the same law which directs a sheriff to lay off a homestead in lands levied, also declares that no homestead right exists as against a mortgage. Therefore, where the sheriff levies on land in which a homestead has never been located, and which cannot be located because of mortgage liens, and is worth more than $1,000, and no homestead is demanded, the sheriff commits no trespass, the sale is not void and the purchaser is not liable for rents and profits of all this land for all the time of his possession.

5. IBID.—IBID.—IBID.—CASES CRITICISED.—This case distinguished from former decisions of this court as to sale by sheriff of lands of a debtor worth less than $1,000, where the homestead had been ascertained by assignment, or by what was equivalent thereto.

6. IBID.—IBID.—IBID.—RENTS.—The purchaser at the sheriff's sale must yield to the debtor the homestead afterwards assigned to such debtor out of the land acquired at such sale, and also account for the rents and profits of such homestead from the date of its assignment; but if the remaining land is not ascertained in this action to be worth as much as the mortgage debt, the purchaser may enforce payment of these mortgages, now owned by him, out of the homestead tract.

Before KERSHAW and IZLAR, JJ., Chester, March, 1891, and June, 1892.

Action by James M. Bradford against W. F. Buchanan. The opinion states the case.

*Messrs. Hemphill & Hemphill* and *S. P. Hamilton*, for appellant.

*Mr. Geo. Wms. Gage*, contra.

April 27, 1893.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   There seems to be some confu-

sion in this case, making a consecutive statements of facts necessary.

(1) James M. Bradford, the plaintiff, was the owner of 325 acres of land, which was incumbered with two mortgages executed by himself, one to Samuel W. Mobley to secure a note for $598.12, with interest at 10 per cent. from September 4, 1883, and another to W. T. D. Cousar for $357.44, with interest at 10 per cent. from January 21, 1886. On the mortgage to Mobley a decree of foreclosure had been obtained on March 29, 1886, and the land (325 acres) ordered to be sold on sales day in October, 1886, but the sale being postponed, has never taken place.

(2) In October, after the aforesaid order of sale, one Ross obtained judgment against the plaintiff Bradford for $253.33, and execution thereon was levied upon the said land, and it was sold by the sheriff for $360, and bid off by the defendant Buchanan, who paid the purchase money to the sheriff, who executed titles to him and let him into the possession, which he has kept ever since. The plaintiff Bradford was present at the sale, and made no objection or claim for homestead, and the next year (1887) he rented the land from Buchanan as the owner thereof.

(3) On December 6, 1886, and December 7, 1886, the Cousar and Mobley mortgages were respectively assigned in due form to the defendant, with the intention of protecting the defendant against any claim of Bradford in the land.

(4) In 1887, Bradford made a claim for the purchase money ($360) paid by Buchanan to the sheriff, as his homestead in the land sold by the sheriff; but Ross, the judgment creditor, ruled the sheriff to pay the money to him, which was ordered, and upon appeal to the Supreme Court the judgment was affirmed. (See *Ross* v. *Bradford*, 28 S. C., 71.)

(5) The plaintiff then sued the sheriff, Hood, under section 2003 of the General Statutes, for damages, for having made, as alleged, the wrongful levy and sale as sheriff of the 325 acres involved in this action, but the verdict was for the defendant, and no appeal.

(6) In 1889, John G. Cousar obtained another judgment

against Bradford, and execution thereon was issued against the property of Bradford, and levied on the said 325 acres, as the property of Bradford, although the land had been sold and was in the possession of Buchanan. Commissioners were appointed to set off a homestead to the plaintiff; they made their return assigning to the defendant (plaintiff) as homestead the tract of land herein as lying on the south side of the Lansford road, containing 125 acres. The defendant Buchanan did not join in the proceedings, and filed exceptions to the return, on the grounds "first, because said board of appraisers set off as a homestead for Bradford 125 acres of his, the said defendants' land; and second, because Buchanan is the owner and holder by assignment of two mortgages executed by said J. M. Bradford on all his interest and title in said land, and in one of said mortgages judgment has been rendered for a foreclosure," &c. His honor, Judge Norton, overruled the exceptions, confirmed the return, and ordered it recorded by the clerk; and further ordered, that this order shall not prejudice any claim which the defendant may make to have the mortgages held by him satisfied out of the said lands. Notice of appeal to the Supreme Court was served, but not perfected, for the reason that:

(7) This action was immediately commenced by summons and complaint for the recovery of the 125 acres of land laid off to plaintiff as a homestead out of the tract of 325 acres, purchased by W. F. Buchanan as the property of J. M. Bradford at sheriff's sale. The prayer for judgment was, that the plaintiff have judgment for possession of said lands (125 acres), and $400 damages for withholding the same, and for costs. The defendant put in a general denial, and the cause stood ready for trial, on the simple issue whether the plaintiff, in an action at law, was or was not entitled to recover the 125 acres assigned to him as homestead in the 325 acres.

It seems that at this stage of the proceeding (March term, 1889,) the lawyers engaged in the case undertook by their own agreement to turn the case into "a controversy without action," under section 374 of the Code. They agreed upon a statement of facts, which changed the issues made by the pleadings. The

counsel for the respondent admits in his printed argument that the complaint was for the recovery of possession of the 125 acres assigned as homestead, and damages for withholding it; but at the trial "the scope of the action was enlarged and the entire tract of 325 acres was brought into the controversy, by the counsel agreeing upon a statement of facts."

Under this "enlarged scope of the action" given to it by the lawyers engaged, it was heard by his honor, Judge Kershaw, who held (1) that the plaintiff is entitled to the 125 acres, in accordance with the assignment of the commissioners, and that the said plaintiff have possession of the same. (2) That the defendant is entitled to set up the mortgage as valid and subsisting liens on the entire tract of 325 acres; but that the plaintiff is entitled to a credit for the rents of said land or any part thereof, received by the defendant for the years since 1886, and appointed the clerk of the court as referee, to state the amount due upon the mortgages, after deducting the credits for rent, and that defendant pay the costs. The clerk as referee accordingly stated the amount due on the mortgages ($1,597.15), and the account for rents, crediting taxes, which amounted to the large sum of $1,019.47. He made his report to the next term of the court; and his honor, Judge Izlar, confirmed the report, decreeing $578.28 to the defendant as due on the mortgages, and ordered the lands to be again sold: *first*, the 200 acres not assigned as homestead, and if the proceeds do not satisfy the balance of the mortgages, then the 125 acres assigned as homestead.

From these successive orders the defendant Buchanan appeals to this court upon a number of exceptions, but as they are long and all printed in the record, we will merely refer to them as occasion requires.

The first exception complains "that Judge Kershaw went beyond the scope of the complaint in the action, and even beyond the submission in this controversy as agreed upon by the parties thereto, and his honor erred in not dismissing the complaint." From the view the court takes, it will not be necessary, and would possibly be improper, to consider this exception. The action was one at law for the

recovery of possession of the 125 acres which had been assigned to the plaintiff as homestead, and to that the proceedings must be limited. It was admitted that at the trial "the scope of the action was enlarged, and the entire tract of 325 acres was brought into the controversy by the counsel" of the parties "agreeing upon a statement of facts." But that could not be done simply by an agreement of counsel. Section 374 of the Code declares, that in submitting a controversy without action, *"the parties* to a matter in dispute may, without action, agree upon a case containing the facts upon which the controversy depends," &c. This court has lately decided in more than one case, that this cannot be done simply by an agreement of the counsel engaged. It may be said that the parties here, having confidence in their counsel, made no objection. This we do not controvert; but that is not enough. The record must show that the parties themselves signed the submission and agreed to the change of issue, so as to make the judgment binding upon them. This is not a mere formal technical matter, but touches the very root of the jurisdiction of the court. So that we must disregard all proceedings and rulings upon the supposed "enlarged scope" given to the case. Possibly it will make little difference in the result, but there is some confusion already, and we think it better to proceed regularly.

Then, considering the case as it was made by the pleadings, how will the matter stand? All the remaining exceptions hinge directly or indirectly upon the point made by the plaintiff, that the sale of the lands under the execution in *Ross v. Bradford* was so wholly void as to carry nothing to the purchaser, but to leave the title to all the lands in Bradford, and, as a consequence, that Buchanan is liable for rents and profits thereof up to this time. We cannot accept that view. It would seem to be rather a strange result, if successive failures to obtain homestead should have the effect of reinvesting Bradford with legal title to the land. Suppose, for a moment, we leave out of view Bradford's claim of homestead. Under an execution against a debtor, the sheriff levies upon his lands, which are encumbered by older liens (mortgages) amounting to a considerable sum; the land is

sold and bid off by a purchaser, who pays his bid and takes
sheriff's title to the lands. It is quite clear that the effect would
be to make the purchaser liable to pay the mortgages in addi-
tion to his bid, and then he would have title to the lands. See
*Schnell* v. *Schroder*, Bail. Eq., 324.

But it is said that the case under consideration is very differ-
ent from that supposed, for the reason that the defendant in
execution and mortgagor is entitled to homestead in the
lands, which made the sheriff's levy and sale, without
assigning homestead, absolutely void for all purposes, and
his deed a nullity. It must be admitted that the law of home-
stead, in all its different phases, is not yet quite settled. It is
of comparatively recent origin, and not at all free from com-
plexity. Most of the States have their own peculiar provisions
on the subject. In this State, however, it will always tend to
prevent confusion by keeping in mind our fundamental doc-
trine, that homestead creates no new estate nor confers any title,
but is simply, what the name imports, "an exemption" from
sale under legal process, leaving the title entirely unchanged.
Our court has more than once indicated that a law which under-
takes to take property from one man and give it to another
would be clearly unconstitutional.

Section 1994 of the General Statutes declares that it shall be
the duty of the sheriff or other officer, before selling the real
estate of any head of a family, to cause a homestead, as above
stated, to be set off to said person in the manner following,"
&c. There is, however, another provision in section 1998 (Gen-
eral Statutes), which provides "that no right of homestead shall
exist or be allowed in any property, real or personal, aliened
or mortgaged by any person or persons whomsoever, as against
the title or claim of the alienee or mortgagee, or his, her or
their heirs and assigns," &c. We suppose that these two pro-
visions must be construed together, and that, as a matter of
course, the direction to the sheriff to lay off homestead was
intended to embrace only those cases where the head of a family
was entitled to homestead. This being so, it is quite clear that
Bradford had no right of homestead in his lands, except as to

such part thereof, if any, as might remain after paying the mortgages, as against which there could be no homestead.

Now the sheriff. had in his hands officially the execution of Ross, which itself was an order to make the money.  There were two mortgages older than the execution, one of which had actually been foreclosed and the order for sale was filed in the proper office.  The matter would have been plain if the lands had been sold under that judgment in foreclosure.  The right of Bradford to homestead depended upon the contingency of his land selling for more than the value of the aggregate mortgages.  When the levy was made, he made no claim for homestead, while he had, subject to the contingency stated, a general right to homestead, it was not located; indeed, it could not be foreseen then that there would be any equity of redemption.  The sheriff made the levy and sale, and Buchanan became the purchaser for $360, paid the money and took sheriff's title to the land.  The effect of this was to make him also liable for the older mortgages.  Under those circumstances, was the sale so absolutely void as to make Buchanan the purchaser a trespasser, and liable for rents and profits?  We cannot think so. It seems that the sheriff was sued for damages in making an illegal levy and sale but was acquitted, and as we think properly.

It is true, that this court has held that, where the debtor is entitled to homestead, and his whole land is of less value than the homestead limit of $1,000, it is already his "homestead premises," as much so as if they had already been assigned; and as a consequence they can not be levied and sold for several reasons—because it is expressly forbidden by the law, and also for the reason that homestead is not an estate, but a mere "exemption," and as such is not capable of being levied and sold.  See *Ketchin* v. *McCarley*, 26 S. C., 1, and *Meyers* v. *Ham*, 20 S. C., 522.  In the case of Ketchin, it was held, that "where the head of a family at the time of judgment obtained against him, resides on land worth less than $1,000, and has no other real property, this land is his homestead, and as such is excepted from the lien that the law gives to the judgment," &c.  It will be observed that the (present) chief justice was very careful to limit the ruling to cases where the

land was of less value than the homestead limit of $1,000. He says: "Where, as in this case as well as in that of *Cantwell* v. *Fowler*, the property in question must necessarily be the property to which the right attaches," &c. It is manifest that this is not such a case, and we have not been able to find one, where, the lands being worth more than $1,000, the existence of a general right of homestead not located, has been held to protect from levy and sale the whole lands of the debtor, however valuable they may be.

It seems that in respect to being exempt from levy and sale there is considered to be a difference between a general right of homestead not located, and "homestead premises" actually set off to the parties, or what is equivalent thereto. In *Kirby* v. *Rice*, 68 Ga., 462, it was held, "that a deed made to secure a debt (mortgage) conveys the title to lands, and a homestead therein will avail nothing as against such title. There is nothing in the debtor upon which a homestead can operate, save the equity of redemption. If he never redeems, there is nothing upon which it can operate," &c. In our own case of *Hosford* v. *Wynn*, 22 S. C., 309, it was held, that where land assigned to a widow as homestead and dower out of her husband's estate, was levied and sold by the sheriff for the payment of her individual debt, ante-dating the constitution of 1868, the purchaser took so much of said land as was assigned for dower, and also the fee in so much of the remainder as descended to the widow, burdened, however, with the homestead exemption so assigned, &c. In delivering the opinion of the court, the late chief justice said: "How much was dower and how much was covered by homestead is not stated, but whatever portion is embraced in the dower has passed to the plaintiff, and as to that portion he is entitled to both title and possession. The deed of the sheriff has also conveyed to him the fee in the entire lands *quo ad* the defendant. This fee is, however, burdened with the possession of so much of the land as has been set apart as the homestead." Under a sheriff's deed to land, all the leviable interest of the judgment debtor passes, and the debtor can not dispute the deed; but a right of

homestead, even after assignment, is a mere right to occupy, and is not subject to levy and sale, &c.

As we understand it, this is an action at law; but inasmuch as the plaintiff has no higher right to any portion of the land than "an exemption" therein as to the part ordered to be set off to him as homestead, we do not see how we can render any judgment in the nature of a verdict, or do more than announce our conclusions. *We hold:*

*First.* That the levy and sale of the sheriff in the case of *Ross* v. *Bradford*, was not absolutely void, but that his deed carried the title to the purchaser, Buchanan.

*Second.* That as a consequence, it was error to order an account taken in favor of Bradford against the purchaser, Buchanan, for rents and profits of the land since date of sheriff's deed to Buchanan; and all orders directing such account for the whole land are reversed, and the account itself taken under them set aside.

*Third.* But as Buchanan purchased the land at sheriff's sale under the judgment of Ross against Bradford, as to which Bradford had a right of homestead as to what is called his equity of redemption in the lands; and as a homestead exemption has already been set off to him, by the order of Judge Norton, which has never been reversed on appeal, we are constrained to hold, that Bradford is entitled to the possession of the 125 acres south of the Landsford road assigned to him as homestead, and to an account for the rents and profits (not rental value) thereof, from the time the homestead was assigned to him in the same, viz: from March 21, 1890; the mortgages of Mobley and Cousar, which have been assigned to the defendant Buchanan, being still *liens* on the 125 acres to the extent of the balance due thereon, as ascertained by deducting from the whole amount due on the mortgage debts the real value of the 200 acres, to be ascertained by the Circuit Court either by referee or otherwise, as may be deemed best by said court, in accordance with the principles laid down in the case of *Trimmier* v. *Vise*, 17 S. C., 499.

The judgment of this court is, that the several orders appealed from be set aside, and the case remanded to the Circuit

Court for such further proceedings as may be necessary to carry out the conclusions herein announced.